IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATHAN PALMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) No. CIV-17-489-R |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the

Commissioner's decision be affirmed.

I.  Administrative History

In his application, Plaintiff alleged that he was disabled beginning August 1, 2013, because of post-traumatic stress disorder; bipolar disorder; loss of vision in one eye with low vision in the other eye; diabetes; hypertension and chronic back pain. (TR 210). Plaintiff reported that he had completed two years of college and "lpn school." (TR 211). He stated he had previously worked as a charge nurse and as an LPN. He reported nine previous employers between January 2004 and March 2013. (TR 217).

Plaintiff appeared before Administrative Law Judge Douglas S. Stults ("ALJ") and testified at an administrative hearing held December 16, 2015. (TR 46-73). At the hearing, Plaintiff testified concerning his usual daily activities, symptoms, functional abilities, medications, and medical treatment. A vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on May 18, 2016. (TR 28-42). Plaintiff appealed, but the Appeals Council found no reason to review the ALJ's decision. (TR 1-6). The ALJ's decision is, therefore, the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.   The ALJ's Decision

After determining that Plaintiff met the insured requirements of the Social Security Act through December 31, 2018, the ALJ followed the five-step sequential evaluation process required by agency regulations to determine whether Plaintiff had been disabled at any time during the relevant period. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); see also 20 C.F.R. §404.1520.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since his alleged onset date, August 1, 2013. (TR 30). At step two, the ALJ determined Plaintiff suffers from the following severe impairments: obstructive sleep apnea; diabetes mellitus; hypertension; hyperlipidemia; obesity; right eye blindness; posttraumatic stress disorder; and bipolar disorder. (TR 30).

The ALJ found at the third step of the sequential evaluation that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. (TR 33-36).

The ALJ next determined Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "medium work," as defined in 20 CFR 404.1567(c)[1], except that the claimant can only: occasionally climb ramps and stairs, balance, stoop,

---

[1] *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

> kneel, [crouch] and crawl; never climb ropes, ladders or scaffolds; must avoid exposure to industrial type vibration; cannot perform jobs that require depth perception; must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, and open flame; understand, remember and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; have only incidental, superficial work-related type contact with co-workers and supervisors, i.e. brief, succinct, cursory, concise communication relevant to the task being performed; and cannot tolerate teamwork type jobs, i.e., where in the claimant would work in conjunction with a co-worker on any particular job task or duty.

(TR 36).

At step four, the ALJ determined Plaintiff is unable to perform his past relevant work as a licensed practical nurse, and charge nurse, because he performed both of these jobs at a high skill level. (TR 40). Based on the testimony of the VE, however, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy such as hand launderer; night cleaner; order runner; meat molder; merchandise marker; routing clerk; addresser; tube operator; and document preparer. (TR 41). For each occupation, the VE identified a code from the Dictionary of Occupational Titles, (G.P.O. 1991) ("DOT") that allegedly corresponded with the job she had identified. The ALJ determined that the VE's testimony was "inconsistent with the information contained in the Dictionary of Occupational Titles." (TR 41). The ALJ did not elaborate on the inconsistencies.[2]

---

[2] Review of the DOT descriptions of the jobs identified, however, revealed one inconsistency: the VE was mistaken about the DOT number with which she identified the job of "night cleaner." (TR

4

Rather, the ALJ attempted to bolster the VE's testimony by stating she had "supplemented her testimony at the hearing with her knowledge, experience, training, and observations of these occupations." (TR 41).

In sum, the ALJ reached his step-five conclusion that Plaintiff was "not disabled" by considering vocational information in the DOT, by considering "the testimony of the vocational expert," and by considering information gleaned from the record about Plaintiff's "age, education, work experience, and residual functional capacity." (TR 42).

III.  General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole.

---

68). The number she cited, DOT 358.687-010, is actually assigned to the job of "change room attendant." Because the VE correctly identified numerous other jobs Plaintiff could perform with the limitations the ALJ identified in the RFC, however, the VE's erroneous testimony was harmless. See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (an error is harmless when no reasonable factfinder could have resolved the factual matter any other way).

5

Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

IV. Analysis

Plaintiff first challenges the ALJ's RFC determination and the hypothetical questions to the VE, contending the ALJ failed to include with specificity all potential limitations resulting from Plaintiff's blindness in one eye.

The ALJ recognized that Plaintiff's blindness in his right eye would preclude him from performing jobs "that require depth perception." Additionally, the ALJ found Plaintiff "must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, and open flame." (TR 36). But Plaintiff contends the ALJ should have considered five additional visual limitations recognized by the Guide for Occupational Exploration, (G.P.O. 1993), and incorporated into DOT job definitions. Plaintiff contends the ALJ should have made

6

specific findings for each as it relates to Plaintiff's limitations, and should have included those findings in the RFC and the hypothetical question to the VE.

An ALJ's hypothetical question to a VE must contain all the impairments—but only those impairments—included in the RFC. Newbold v. Colvin, 718 F.3d 1257, 1268 (10th Cir. 2013) (hypothetical question to VE adequately reflected impairments and limitations borne out by the record); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (ALJ's hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record.").

Plaintiff states without citation to the record that the RFC "should have included limitations resulting from the inability to use a full range of vision, inability to judge distance, and difficulty reaching for and grasping objects." Plaintiff's Brief at 5. Plaintiff supported this statement, not by citing evidence in the record, but rather by citing an internet blog generated by Duke University. The article in question addresses vision-related limitations common to all adults who lose vision in one eye. Those limitations, according to the article, include inability to use a full field of vision, inability to judge distance, difficulty reaching for and grasping objects, and difficulty avoiding collisions when walking.[3] Plaintiff's Brief at 5.

But in evaluating a claim for disability, the Agency relies on expert testimony

---

[3] https://www.dukehealth.org/blog/learning-live-one-eye. This evidence was not included in the record and is therefore not considered in this Report and Recommendation.

and job descriptions as listed in the DOT. The DOT recognizes six visual demands a job might—or might not—require; Near Acuity; Far Acuity; Depth Perception; Accommodation; Color Vision; and Field of Vision. The ALJ included in the RFC Plaintiff's inability to perform jobs requiring depth perception. The question, then, is whether the jobs identified by the VE include visual demands beyond Plaintiff's capability. In comparing Plaintiff's visual limitations with the visual demands of the jobs as defined in the DOT, it is important to consider that on December 10, 2015, Plaintiff's vision in his left eye was corrected to 20/20 with glasses. (TR 582). According to the Commissioner, the prescription for glasses included in this document indicates Plaintiff is near sighted with astigmatism. Commissioner's Brief at 3, n. 3. Plaintiff does not dispute the Commissioner's description.

Most of the jobs identified by the VE in response to the ALJ's proper hypothetical question require few, if any, of the visual demands identified for jobs defined in the DOT. For each job listed, this agency-recognized vocational resource includes a description of job duties and a list of the mental and physical demands required to perform each job. For example, the DOT identifies none of the visual demands as necessary for the job of Order Runner. See DOT 525.687-058, 1991 WL 674452. The jobs of four more of the jobs identified by the VE require only near acuity, with which Plaintiff's near sightedness would not interfere. See DOT 361.684-010, 1991 WL 672982 (Hand Launderer); DOT 209.587-010, 1991 WL

8

671797, (Addresser); DOT 239.687-014, 1991 WL 672235, (Tube Operator); and DOT 249.587-018, 1991 WL 672349, (Document preparer). The VE's undisputed testimony demonstrates that a significant number of each of these jobs exist in the national economy: 13,200 order runner jobs; 27,400 hand launder jobs; 15,850 tube operator jobs; 34,400 addresser jobs; and 15,850 document preparer jobs. (TR 68). Thus, the ALJ's hypothetical question to the VE included all limitations the ALJ found and listed in the RFC. The RFC was, itself, supported by substantial evidence. The ALJ's RFC and hypothetical questions to the VE are sound, and Plaintiff's RFC demonstrates he would be able to perform a significant number of jobs that exist in the national economy. Thus, there is no reversible error at steps four and five.

Finally, Plaintiff contends the ALJ failed to properly consider the 100% disability rating from the Department of Veterans Affairs ("VA") and the "opinions" of his treating physician at the VA. Plaintiff's Brief at 10. The ALJ's failure to cite to the record throughout his decision makes it extremely difficult to discern exactly what medical records he considered. After careful comparison between the decision and the record, however, it appears the ALJ did consider the VA medical records, even though he did not explicitly identify them. (TR 33).

Under regulations in effect when Plaintiff filed his application for benefits, the Commissioner was instructed to consider disability ratings from other agencies

such as the VA.[4]  See Baca v. Dep't of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993) (disability determinations by other agencies should be considered). The regulations did not, however, compel the Commissioner to automatically grant benefits based on a previous determination of disability by a different agency.  As the Tenth Circuit recognized in Jones v. Barnhart, 53 F. App'x 45, 47 (10th Cir. 2002), the VA proceedings are entirely different and separate from a claim of disability under the Social Security Act, with different parties, different evidentiary standards, and different bodies of law governing their outcomes.  Compare 38 C.F.R. § 4 (Department of Veterans Affairs schedule for rating disabilities), with 20 C.F.R. § 404, subpt. P (social security regulations for determining disability and blindness).

In this case, the ALJ specifically noted the VA's disability rating, as required by the regulations in effect at the time he issued his unfavorable decision.  But Plaintiff also contends the ALJ erred in failing to determine the weight given to "the opinion of Dr. Ramirez regarding Mr. Palma's vision."  Plaintiff's Brief at 10.  The medical records generated by Dr. Ramirez do not, however, include any opinions

---

[4] The SSA regulation governing appropriate consideration of disability ratings from other agencies has since been revised.  For claims filed on or after March 27, 2017, the SSA "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504.  The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." Id.

concerning functional limitations resulting from Plaintiff's vision or any other severe impairment. It appears that Plaintiff is suggesting the resulting VA disability rating should be considered the "opinion" of Dr. Ramirez. As the ALJ noted, however, Dr. Ramirez did not determine Plaintiff's disability rating. The rating is an administrative decision, just as the ultimate determination of disability under the social security regulations is an administrative decision. Thus, the ALJ did not err in his consideration of the VA disability rating or the medical records from the VA.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner denying Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before January 10th , 2018, accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the

undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this  21st  day of  December, 2017.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE